Rockingham,
No. 4294.

LOUIS C. DEROCHEMONT & a. v. JOHN E. HOLDEN & a.

Argued April 7, 1954.

Decided May 19, 1954.

*Jeremy R. Waldron, Jr.* (by brief and orally), for the plaintiffs.

*Charles M. Dale* and *Burns, Calderwood & Bryant* (*Mr. Bryant* orally), for the defendants.

DUNCAN, J. By this action the plaintiffs assail as unauthorized and negligent the conduct of the selectmen of Newington in selling to the United States certain real estate belonging to the town. In support of their demurrer and plea in bar, the defendants assert that their action was within their jurisdiction and authority as selectmen, that the plaintiffs are without standing to maintain the action on behalf of themselves and other taxpayers, and that their suit is barred by action taken by the voters of the town at the 1953 annual meeting.

Although the plaintiffs' declaration alleges that the defendants acted "without due care for the interests of the town," the damages are alleged to have been suffered by the "plaintiffs and other taxpayers in said town." It seems plain that if any cause of action arose out of the transactions described in the writ, it was one in favor of the town to which the property belonged, rather than its taxpayers. See *Kidd* v. *Traction Company,* 72 N. H. 272, 288. Since the claim is against the selectmen however, it would be unreasonable to expect them to enforce it, or to require that the plaintiffs first demand that they do so, before instituting suit on behalf of the town. *Id.* We think it plain that an action may be brought by taxpayers to enforce a cause of action on behalf of the town, where the selectmen refuse to act, or where a request that they do so would be futile. 18 McQuillin, Municipal Corporations (3rd *ed.*) s. 52.17. *Clapp* v. *Jaffrey,* 97 N. H. 456, 460, 461. Since the writ may be amended to present a cause of action in equity (*Blood* v. *Electric Co.,* 68 N. H. 340; *Sherburne* v. *Portsmouth,* 72 N. H. 539, 542) on behalf of the town in which any recovery will inure to its benefit (*Gates* v. *Hancock,* 45 N. H. 528), and notice

may be given to the town (*Kidd* v. *Traction Co.*, *supra*; *Akscyn* v. *Bank*, 78 N. H. 196, 200) the questions presented will be considered as if such amendment had been made.

The defendants' demurrer and plea asserts first that they are under no liability because they acted "within their jurisdiction and authority as selectmen" and "in good faith according to their best judgment in their official administrative and judicial capacity." In the recent case of *Moulton* v. *Beals*, 98 N. H. 461, occasion was presented to consider the nature of the authority of selectmen with respect to the management of suits against the town. The ancient doctrine was then reaffirmed that selectmen are not general agents of the town "clothed with the general powers of the corporate body for which they act," but "can only exercise such powers . . . as are properly incident to the special and limited authority conferred on them by their office." *Rich* v. *Errol*, 51 N. H. 350, 354. In this respect their powers differ from those of city councils whose acts "are the acts of the city." *Lucier* v. *Manchester*, 80 N. H. 361, 362; *Blood* v. *Electric Co.*, 68 N. H. 340, 341; R. L., c. 66, s. 1.

There can be no question of the authority of the town itself to sell and convey its real estate. R. L., c. 51, s. 3, provides in part: "Towns may purchase and hold real . . . estate for the public uses of the inhabitants, and may sell and convey the same." This power has been exercised from the earliest days. See *Cofran* v. *Cockran*, 5 N. H. 458; *Goodale* v. *Wheeler*, 11 N. H. 424; *Crystal Spring Finishing Co.* v. *Freetown*, 314 Mass. 315, 317. The powers of a town reside in its inhabitants. Its government, unlike that of a city, is not representative (*State* v. *Wimpfheimer*, 69 N. H. 166, 169) but democratic in form. Selectmen are not authorized to exercise the powers of the town, but only to manage its prudential affairs and to perform the duties by law prescribed. R. L., c. 59, s. 11. Their duties "with respect to the prudential affairs" empower them to do "only such acts as are required to meet the exigencies of *ordinary* town business" (*Moulton* v. *Beals*, *supra*, 463), and no specific statutory power to sell and convey real estate of the town is conferred. The sale of the town's real estate is not to be classified as its "ordinary business," nor does it fall within the class of "pecuniary matters" embraced in "prudential affairs." See *Carlton* v. *Bath*, 22 N. H. 559, 565. *Cf. West* v. *Errol*, 58 N. H. 233. And so in *Carlton* v. *Bath*, *supra*, in holding that the selectmen did not have a power which they had

assumed to exercise without authorizing vote of the town, the court remarked that the power in question fell "but little, if any, short of that to execute a deed." *Id.*, 568. We hold that the valid sale of real estate belonging to a town requires that the town itself through its inhabitants exercise the power conferred upon it by the Legislature. See *Urch* v. *Portsmouth,* 69 N. H. 162; *Goodale* v. *Wheeler, supra; Cofran* v. *Cockran, supra; Lumbard* v. *Trask,* 50 Mass. 557; *Crystal Spring Finishing Co.* v. *Freetown, supra.* The defendant selectmen had no power by virtue of their office to sell the town's real estate.

The defendants assert secondly that the power of the town was exercised by it at its 1953 annual meeting when articles 7 and 8 of the warrant were adopted. These articles provided as follows:

"7. To see if the town will vote to use the sum of $10,000 of the funds received from the United States of America for the taking of land in the town, for the purpose of creating a capital reserve fund for the construction, re-construction or alteration of the town buildings and acquisition of highway building, repairing and maintenance of equipment.

"8. To see if the town will vote to appropriate the sum of $5,730 of the funds received from the United States Government for the taking of land in the town, to be used in the general revenue received to help off-set the loss of revenue through the reduction of taxation from property taken over by the U. S. Government."

Adoption of these articles, it is contended, was ratification of sale by the selectmen of the parcels of land in question for a price of $15,730. The law is well settled that effective ratification requires that the principal act with full knowledge of what the agent has done (*Greenland* v. *Weeks,* 49 N. H. 472, 479) and with an intention to adopt his acts. *Wilson* v. *Atwood,* 81 N. H. 61, 64; *Ernshaw* v. *Roberge,* 86 N. H. 451, 454, 455. See also, *Meader* v. *West Newbury,* 256 Mass. 37; *Lisbon* v. *Holton,* 51 N. H. 209; *Grant* v. *Beard,* 50 N. H. 129. It may fairly be assumed that the voters of the town of Newington were aware of pending or projected action by the federal government to acquire land in the town for the construction of an air base. By federal statute the United States is authorized to take and condemn land by the filing of a "declaration of taking." 40 U. S. C. A., s. 258a. The articles of the warrant adopted by the voters in 1953 were couched in the language of "taking," and contained no indication that the land referred to

had in fact been "sold" rather than "taken," or of what it consisted. Under these circumstances, with no evidence of what transpired before the vote (see *Meredith* v. *Fullerton,* 83 N. H. 124, 128), the action of the voters cannot be held as a matter of law to have constituted ratification of the prior acts of the defendants. *Meader* v. *West Newbury,* 256 Mass. 37, *supra.* If in fact the knowledge of the voters was sufficient so that their action was ratification, that knowledge must have been obtained from sources other than the articles of the warrant.

The defendants impliedly concede this to be so when they argue that the voters must have realized that the funds appropriated in 1953 did not result from condemnation because of a "prior vote," adopted at the 1952 meeting under article 5 of the warrant, that "the disposition [of town land and buildings] be left to the . . . selectmen."

That such action was taken in 1952 is not questioned by the plaintiffs, but the defendants have not alleged it as a basis for their demurrer and plea, nor is it presented as a part of the issue transferred. The plaintiffs assert in this court that similar action has been taken under articles in the warrants of annual meetings of the town since 1892, and that the records of prior meetings show that the vote of 1952 was not intended to authorize sale of the land and buildings in question. Thus any issue relating to the effect of the action taken in 1952 appears to present questions of fact not coming within the scope of the issue transferred in advance of trial. *Backman* v. *Charlestown,* 42 N. H. 125, 136, 137; *West* v. *Errol,* 58 N. H. 233, 235, *supra.* It follows that the town's action in 1953, standing by itself, was not ratification of the defendants' acts as a matter of law.

The demurrer and plea in bar must be overruled if the plaintiffs' writ is amended to state a cause of action in equity on behalf of the town; otherwise the demurrer should be sustained.

*Remanded.*

All concurred.